## EX PARTE RUSSELL COCKBURN, Petitioner.

### In Banc, December 17, 1923.

1. **HABEAS CORPUS: Waiver of Writ: Issues Made by Return.** The formal issuance of the writ of *habeas corpus* and the production of the body of petitioner before the court being waived, the return of respondent to the allegations of the petitioner's application is taken as though made to the writ.

2. **REQUISITION: By Acting Governor.** A requisition by the acting governor demanding the extradition of a fugitive from justice, where it appears that the acting governor is also the lieutenant-governor, and where under the laws of the demanding state the powers and duties of its governor, in case of his disability, may be performed by the lieutenant-governor, is sufficient to authorize the Governor of Missouri to issue his warrant for the fugitive's arrest. And the disability of the governor of the demanding state is shown by the record in the *habeas corpus* case showing that he notified the lieutenant-governor of his disability and called him to discharge the duties of the office.

3. ————: ————: **Signature Sufficient: Must be Disproved.** The signature of the "acting governor" to the application for requisition is sufficient to sustain a presumption that he was authorized to act as such, especially where his signature as acting governor is attested by the secretary of state; and where such is the case, an objection that he was not authorized to issue the requisition papers must be alleged and proved in a *habeas corpus* proceeding.

Ex parte Cockburn.

4. ————: **Fugitive from Justice.** A verified indictment charging a person, sought to be extradited, with obtaining money under false pretenses in another state, accompanied by affidavits that the accused is in this State and a fugitive from justice, constitute prima-facie proof that he is a fugitive from justice, and in the absence of strong countervailing proof are sufficient to authorize a denial of the writ of *habeas corpus* for his release.

5. ————: **Warrant for Arrest: Executed on Government Reservation.** The petitioner was indicted by a grand jury of Iowa for obtaining money under false pretenses. Subsequently, being entitled to do so by reason of former service in the United States Army, he made application to the Veterans' Bureau for a permit to enter a Government hospital to receive treatment for diabetes, and the permit being granted he was transported at Government expense to the hospital at Jefferson Barracks in this State, and while there under-going treatment as a patient application for a requisition was made by the Acting Governor of Iowa upon the Governor of Missouri for his return to Iowa, upon an allegation that he was then charged with a felony and was a fugitive from justice, and thereupon the Governor of Missouri issued a warrant for his arrest, which was executed by the sheriff while he was still at the hospital under-going treatment, and in his application for a discharge by writ of *habeas corpus* he contends that the warrant is illegal because it was executed upon a reservation of the Government of the United States. *Held, first,* that the warrant was not illegal and the sheriff is authorized by law to execute it unless the accused is confined under claim, color or authority of the United States; *second,* the petitioner's detention under the authority of the United States does not apear, since he voluntarily, in the exercise of a privilege granted him as a former soldier, sought admission to and became a patient of the Government hospital and as such was undergoing treatment at the time the warrant was served upon him; and, *third,* the mere fact that he was territorially within the confines of the Government at the time the warrant was served upon him did not render him immune from arrest upon a State warrant.

6. **ARREST: On Jefferson Barracks Reservation.** The purchase of lands by the United States for public purposes does not of itself oust the jurisdiction or sovereignty of the State over the lands so purchased, and immunity from arrest of a person accused by the State of having committed a felony in violation of its laws exists only when it appears in the cession of lands by the State to the Federal Government that the State has divested itself of all power over the territory ceded in regard to the execution of process or the arrest and detention of persons found thereon who are charged

with crime, and there was no such cession, legislative or otherwise, by the State of Missouri to the Federal Government, of the land on which Jefferson Barracks is located. The State has power to arrest an accused charged with a felony who has sought admission to and voluntarily been admitted to Jefferson Barracks hospital for the purpose of receiving treatment for diabetes, and for whom a warrant is issued while he is undergoing such treatment and is for that purpose confined territorially within the hospital reservation.

## Habeas Corpus.

Writ denied.

*Charles J. Riley* for petitioner.

(1)   The right to extradite a person is based upon Section 2 of Article IV of the Constitution of the United States. This article provides that the demand shall be made by the executive authority of the State. By the Act of Congress, the indictment upon which the requisition is based, must be certified by the governor or chief magistrate as authentic. The law upon which extradition is based is one in restraint of liberty, and, therefore, must be strictly construed and strictly pursued. The Act of Congress provides for a method that is summary in its effect, and it must therefore be strictly complied with. The failure to properly certify gives the Governor of Missouri no jurisdiction, as there is no comity between states on this matter, and the writ of extradition is governed solely by the Constitution and laws of the United States. A strict compliance with the Constitution and statutes is essential to give validity to a warrant issued upon extradition. Ex parte Powell, 20 Fed. 806; Kentucky v. Dennison, 24 How. 104; Ex parte Morgan, 20 Fed. 289. (2)   If the indictment is not authenticated in accordance with the Act of Congress by the executive of the demanding state, the governor of the asylum state has no legal authority to issue his warrant for the arrest of the accused. 1 Abbott's Prac. Rep.

301 Mo.—37.

(N. S.) 347. (3) Where the petitioner questions and denies the authority of the party who makes the demand as Governor of the demanding state, there is no presumption that the party was signing as the governor. Kemper v. Metzger, 169 Ind. 112. (4) The governor is not clothed with judicial powers and there is no law of the United States or of this State that provides that his determination is final in an extradition case. The court may go behind the executive warrant and examine into the sufficiency of the papers upon which it is based. Jones v. Leonard, 50 Iowa, 110; In re Terrill, 51 Fed. 213; In re Corning, 51 Fed. 205; Church on Habeas Corpus, 821; Hyatt v. New York, 188 U. S. 691. (5) The question as to who is the chief executive or who has the executive authority in the State of Iowa will be determined by the Constitution and the statutes of that state. Section 1 of Article IV of the Constitution of Iowa provides: "The supreme executive power of this State shall be vested in a chief magistrate, who shall be styled the Governor of Iowa." Section 17 provides that "in case of death, impeachment, resignation, removal from office or other disability of the Governor, the powers and duties of the office for the residue of the term or until he shall be acquitted or the disability removed, shall devolve upon the Lieutenant Governor." The Iowa Constitution is unusual, in that it makes no provision that anyone shall act for the governor in his absence from the State. From the face of the record, interpreted in the light of the Iowa Constitution and laws, there can be no presumption that the party signing this demand and authentication is the Governor of Iowa. . The record on its face even shows that the party signing makes no pretense to the governorship, as he refers to himself as "Acting Governor," and signs as "Acting Governor," thus honestly and fairly giving us his true status, and allowing his name to be affixed to the instrument for its worth, if it has any worth in extradition proceedings. Since there was no legal demand, there can be no legal warrant issued by the Governor of Missouri, and since there was no authentica-

tion by the Governor or Chief Magistrate of Iowa of the indictment as provided in the statutes of the United States, the very foundation upon which the warrant of the Governor of Missouri is based, is illegal and will not sustain the issuance of a warrant. The Constitution of Iowa makes no provision for an Acting Governor to exercise the executive power of the State. It does not provide that the Lieutenant-Governor shall be one of the executives of the State of Iowa. (6) The question as to whether or not a person has been substantially charged with a crime and whether the Constitution and Statutes of the United States have been complied with, is a question of law, and is always open to judicial inquiry on an application for a discharge on a writ of *habeas corpus*. Roberts v. Reilly, 116 U. S. 80; Hyatt v. New York, 188 U. S. 691; People v. Brady, 56 N. Y. 182; Ex parte Morgan, 20 Fed. 298; Ex parte Owen, 136 Pac. 197. The liberal rule as laid down by the Supreme Court of the United States in determining the fact as to whether a person is a fugitive from justice in Roberts v. Reilly, 116 U. S. 80, in no way prevents a court in which a *habeas corpus* proceeding is pending to determine for itself whether a prisoner is a fugitive from justice within the Constitution and laws of the United States. One arrested and held as a fugitive from justice is entitled to writ of *habeas corpus* to question the lawfulness of his arrest and imprisonment, showing by competent evidence as a ground for his release, that he was not within the meaning of the Constitution and laws of the United States a fugitive from the justice of the demanding state, and thereby overcoming the presumption to the contrary arising from the face of an extradition warrant. McNichols v. Pease, 207 U. S. 100. Whether or not a person is a fugitive from justice is a question of fact to be determined by the court upon a writ of *habeas corpus*. Ex parte Todd, 47 L. R. A. 566; Ex parte Weinhaus, 216 S. W. 548; Hyatt v. Cockran, 188 U. S. 691. (7) The petitioner is in Missouri upon the order of the United States administrative officer, whose authority to direct the move-

ments of the petitioner is given to him by the same authority that gives the State of Iowa the right to attempt to remove the petitioner from this State by a writ of extradition. Secs. 9, 11 and 13, War Risk Insurance Act. Where the Federal Government acquires land for a certain purpose, the State cannot interfere with the full, free and perfect use for which it was acquired, or in any way embarrass that use. Leavenworth v. Lowe, 114 U. S. 525; Ohio v. Thomas, 173 U. S. 276. The answer of the respondent to the petition does not deny the facts set forth as to the petitioner being a patient in the United States hospital and that he was ordered to the State of Missouri by the officers of the United States government.

*Vernon R. Seeburger* for respondents.

(1)   In an extradition hearing but two question are presented to the Governor:   (a)   Is the person demanded substantially charged with the crime against the laws of the state from whose justice it is alleged that he had fled by an indictment or affidavit properly certified?   (b) Is he fugitive from justice from the state demanding him?   25 C. J. 265; Seely v. Beardsley, 194 Iowa, 863; Leonard v. Zweifel, 171 Iowa, 522; Munsey v. Clough, 196 U. S. 364, 47 L. Ed. 515; Roberts v. Reilly, 116 U. S. 80, 29 L. Ed. 544.   (2)   The executive has no authority to act upon a requisition which on its face appears to be defective.   Where, however, the statutory prerequisites appear, it is the duty of the executive to whom the demand is presented to cause the arrest of the alleged fugitive from justice. This duty is ministerial, and not discretionary, and has been described as imperative, although in the absence of statute there is no power to compel the executive to act. The power to determine whether upon the showing made the accused is extraditable cannot be delegated by the executive. 25 C. J. 265; Biddinger v. New York City Police Comr., 245 U. S. 128, 62 L. Ed. 193; Marbles v. Creecy, 215 U. S. 63, 54 L. Ed. 92; Drew v. Thaw, 235 U. S. 432, 59 L. Ed. 302; Ex parte Hart, 63 Fed. 249; Illinois v. Pease, 207 U. S.

100, 52 L. Ed. 121. (3) The old rule that, to consti-
tute one a fugitive from justice, he must actually flee
from the state in order to avoid prosecution, has long
ago been abandoned. A "fugitive from justice," with-
in the meaning of Federal law, is one who commits a
crime within one state jurisdiction and, when called
upon to answer therein, is not there—that is, has re-
moved, it matters not in what manner or for what pur-
pose, to another state jurisdiction. Leonard v. Zweifel,
171 Iowa, 522; Taylor v. Wise, 172 Iowa, 1; Roberts v.
Reilly, 116 U. S. 80, 29 L. Ed. 544; Appleyard v. Massa-
chusetts, 203 U. S. 222, 51 L. Ed. 161. (4) The motives
behind the prosecution have no bearing on the question
whether extradition should be granted. For example—
the fact that the prosecution might be prosecuting to col-
lect a debt is a fact not to be considered by the executive
hearing the proceedings. Leonard v. Zweifel, 171 Iowa,
522; 25 C. J. 267, sec. 32, note 18; Drew v. Thaw, 235
U. S. 432. (5) In a *habeas corpus* proceeding, the gov-
ernor's warrant is prima-facie evidence that accused is
a fugitive, and the burden of overcoming the prima-facie
case made by the warrant is upon accused. 29 C. J. 76, 77.
(6) The motive which induced the departure of the ac-
cused person from the demanding state is immaterial.
25 Corpus Juris, 258; Drew v. Thaw, 245 U. S. 432;
Appleyard v. Massachusetts, 203 U. S. 222, 51 L. Ed.
161; State v. Richter, 37 Minn. 436; Leonard v. Zweifel,
171 Iowa, 522. Therefore accused coming to Missouri
for medical treatment does not alter his status as a fugi-
tive. (7) The extradition proceedings are sufficient if
certified to by governor or *chief magistrate* and are
founded on an indictment. U. S. Compiled Statutes
(1918) secs. 10126, 10127; 25 Corpus Juris, 261. (8)
The duties of the governor of Iowa may be performed
by others acting in his stead. Presumptively, party act-
ing as governor acted with authority. Iowa Constitution,
sec. 17, art. 4; 25 Corpus Juris, 265, 269. (9) The
petitioner's reply affirmatively shows that he was in
Iowa, that he was indicted there, that he put up an ap-

pearance bond, that later he voluntarily applied for treatment by the U. S. Veteran's Bureau, and was requested to appear at St. Louis, that he is not involuntarily restrained in Missouri, but is here voluntarily, and admittedly may leave when he wants to—all of which constitutes him a fugitive from justice. (10) A party committing a crime cannot take refuge on a government reservation and avoid arrest. (11) A state only loses jurisdiction of crimes even committed on Federal lands by express statutory relinquishment. 5 Corpus Juris, 367.

WALKER, J.—The petitioner alleges that he is unlawfully deprived of his liberty by John F. Willman, Sheriff of St. Louis County, Missouri, and Park Findley, Sheriff of Polk County, Iowa. The formal issuance of the writ and the production of the body of the petitioner before this court having been waived, the returns of the respondents to the allegations of the petitioner's application are considered as though they were made to the writ under the recognized formalities of our procedure in cases of this character.

The petitioner was indicted by the grand jury of Polk County, Iowa, for obtaining money under false pretenses. Subsequently, being entitled so to do by reason of former service in the United States Army, he made application, while in Des Moines, Iowa, to the Veterans' Bureau for a permit to enter a Government hospital to receive treatment for diabetes. This permit was granted and he was assigned to the hospital at Jefferson Barracks in this State, and his transportation and the other expenses of his journey thereto having been paid by the Government he was admitted as a patient therein. While there undergoing treatment, application for a requisition was made by the Acting Governor of Iowa upon the Governor of Missouri for petitioner's return to the State of Iowa, upon the allegation that he was charged in Iowa with a felony and was a fugitive from justice. Upon the filing of the application with the Governor of this State and a

consideration of same, he granted a requisition and directed the issuance of a warrant for the arrest of the petitioner, which was executed by the Sheriff of St. Louis County, preparatory to the delivery of the petitioner to the sheriff of Polk County, Iowa, as the agent or messenger named to convey the petitioner to that State to answer the charge preferred against him. Thereupon the application for the petitioner's discharge was filed in this court. The returns thereto of the officers who have the legal custody of the petitioner and who are named as respondents, are, as to the Sheriff of St. Louis County, that his detention of the petitioner is under the writ of extradition and the warrant based thereon issued by the Governor of this State; and as to the Sheriff of Polk County, Iowa, that his detention of the prisoner is under the same writ and warrant and arises out of the authority delegated to him by the governor of the demanding state.

The illegality of the petitioner's detention is alleged to consist in the facts: (1) that the application for the requisition and the return of the petitioner to Iowa was made by the acting governor, rather than the actual governor of that state and that the laws of same do not confer power upon an acting governor to apply for requisitions for the return of persons charged with crime who are in another state; and that the granting of the requisition by the Governor of Missouri and his issuance of the warrant for the arrest of the petitioner was unauthorized and hence futile to effect his legal removal to Iowa; (2) that the petitioner is not a fugitive from justice, but a patient in a United States hospital on a Government reservation which he left the State of Iowa to enter and where he had been for a number of months prior to and at the time of the service of the warrant upon him; (3) that the warrant issued by the Governor of the State of Missouri is illegal for the reason that it was executed upon a reservation of the national government, where the petitioner was at the time in a hospital undergoing treatment as a patient.

I.   The supreme executive power in Iowa, as in other states, is vested in the governor.   The Constitution of the United States (Sec. 2, art. 4), and the statutes (U.

Requisition by
Acting Governor.

S. Comp. Stat. 1901, sec. 5278, p. 3597), while not constituting a grant of power are in express recognition of the authority theretofore existing in the governor of a state to demand of the executive of another state the extradition of a fugitive from justice.   [Holmes v. Jennison, 14 Pet. (U. S.) l. c. 597; In re Fetter, 3 Zab. (N. J.) 311; Kentucky v. Dennison, 24 Howard.(U. S.) 66.]   An illustration of the exercise of this power in the State of Iowa appears in Iowa v. Kealy, 89 Iowa, 94, which is but a type of other cases of like effect.   Under the Iowa Code, 1919 (Sec. 9145, title 34, chap. 9), the governor in any case authorized by the Constitution and laws of the United States may appoint an agent to demand of the executive of another state or government the return of a fugitive from justice charged with treason or felony.   In the event of the disability of the governor, his powers and duties may be performed by the lieutenant-governor.   [Sec. 17, art. 4, Const. Iowa.]   The disability of the governor in this case is shown by the record in that he notified the lieutenant-governor of such disability and called him to discharge the duties of the office. It also appears that the acting governor who made the demand upon the Governor of Missouri was the lieutenant-governor of Iowa, whose authority under the circumstances was, as before shown, that of the governor.   [State ex rel. McNichols v. Justus, 84 Minn. 237, 55 L. R. A.  325; 11 R. C. L. sec. 18, p. 726.] Moreover the contention is not made that the lieutenant-governor, as such, was not authorized to perform the duties of the governor in the demand made herein, but that the same is insufficient because it appears upon the face of the application that the demand is made simply by the "acting governor."   In other words the implication is clear that the defect complained of is in the omission of the words, "lieutenant governor" preceding those of "acting governor."   The signature of the acting governor without more was sufficient to sustain the presump-

tion that he was authorized to act as such.  This is especially true in view of the attestation of his signature as acting governor by the Secretary of State.  In addition, it is a general rule that if objection be made to the sufficiency of requisition papers, the ground of the objection thereto must be alleged and proved or it will not be considered upon a review of the proceedings by *habeas corpus,* the presumption being, in the absence of words of negation accompanied by proof, that the person making the demand for the writ was at the time authorized so to do.  [Kemper v. Metzger, 169 Ind. l. c. 124; 11 R. C. L. sec. 18, p. 726; Armstrong v. Van DeVenter, 21 Wash. 682, 12 Am. Cr. Cas. 327; Ex parte Dawson, 83 Fed 306; Ex parte Stanley, 25 Tex. Cr. 372; Katyuga v. Gosgrove, 67 N. J. L. 213.]

II.  The second contention is that the petitioner is not a fugitive from justice within the meaning of the Federal Constitution and statutes.  Judicial literature is replete with discussions upon this subject.

Fugitive from Justice.

The weight of these opinions is to the effect that the moving purpose which may have induced one accused of crime to leave the state in which it was committed will not be considered by the courts of the state in which he is found in determining an extradition proceeding; but that the sufficiency of the demand for his return will be determined by a formal showing that he is charged with the commission of a crime within the demanding state and that when sought to be subjected to criminal process to answer therefor, he is found to have voluntarily left that state and is then in the asylum state from which it is sought to extradite him.  Illustrative of the application of this rule in Missouri we held in Ex parte Opel v. Weinbrenner, 285 Mo. 365, that a verified complaint charging persons, sought to be extradited, with murder in another state accompanied by affidavits that the accused were in this State and fugitives from justice, constituted prima-facie proof of those facts and would be deemed sufficient in the absence

of strong countervailing proof to the contrary to authorize the denial of a writ of *habeas corpus* for their release and to authorize the then acting governor to whom the application was made to honor the requisition for their delivery to the demanding state to answer the charge preferred against them. Later in Ex parte Albright v. Clinger, 290 Mo. 83, after again reviewing the rulings on the subject even more explicitly than in the Opel Case, we held in denying the right to release by *habeas corpus* by one sought to be extradited for a crime charged to have been committed in another state, and who was shown to be in this State at the time criminal process to answer for the offense was sought to be served upon him, was a fugitive from justice and as such subject to extradition.

The application made to the Governor of this State containing all of the essential facts necessary to bring this case within the rule above announced and to which we have, as shown, given adherence, we overrule this contention.

A review of the rulings elsewhere upon this subject may be found in Reed v. Carrigan, exhaustively annotated in 13 A. L. R. 415; and in State v. Wellman, 102 Kan. 503, as annotated in 1918D, Ann. Cas. l. c. 1011, and in Ex parte McDaniel, 76 Tex. Crim. 184, as annotated in 1917B, Ann. Cas. l. c. 337.

III. The further contention is made that the service of the warrant issued by the Governor of this State is illegal in that it was executed upon a reservation of the national government where the petitioner was at the time in a United States hospital undergoing treatment as a patient.

**Arrest on Government Reservation.**

State courts and officers authorized by the laws of a state to issue writs of *habeas corpus* have that right in any case where it is alleged that the person is illegally confined within its limits, unless it appears that the confinement is under the claim, color or authority of the United States. [In re Tarble, 13 Wall. (U. S.) 397; Robb v. Connolly, 111 U. S. 624.]

The petitioner's detention under the authority of the United States does not appear. He voluntarily, in the exercise of a privilege granted to him as a former soldier, sought admission to and became a patient in the Government hospital at Jefferson Barracks and as such was undergoing treatment there at the time the warrant was served on him. His entry to the hospital being voluntary his right to depart therefrom was subject to his own will. It cannot be said therefore that he was in any sense detained under the authority of the United States. The mere fact that he was territorially within the confines of a Government reservation at the time the warrant was served upon him did not render him immune from arrest upon a state warrant. Such immunity exists only when it appears in the cession by the State to the National Government that the former has divested itself of all power over the place or territory ceded in regard to the execution of process or the arrest and detention of persons found thereon who are charged with crime. There was no cession, legislative or otherwise, of the character above referred to in the transfer of the land, on which Jefferson Barracks is located, to the United States. An account of this transaction, while interesting to the student of history, is otherwise irrelevant. It will suffice to say that the land on which the barracks is located was originally a part of a tract ceded by the Governor of Upper Louisiana to the village of Carondelet and was designated in the survey of same as the "Commons of Carondelet." This cession was confirmed to the village by the Surveyor General of the United States in 1834. Various surveys were made by the government at different times to ascertain the extent of the portion, if any, of the land thus ceded, which was being used by the government of the United States. In 1854, the village of Carondelet made a quit-claim deed to the Government to certain portions of this cession on which the Government barracks had been erected. Thereafter the village of Carondelet brought suit in the United States Court of Claims as-

sailing the validity of the proceedings under which the United States claimed title to the land being used by it and asserted title in the village to the entire tract. In the meantime the village was merged in the city of St. Louis, and the suit was thereafter prosecuted in its name. The Court of Claims ruled adversely to the city's contention, and the court's finding was affirmed by the Supreme Court of the United States. [City of St. Louis v. United States, 92 U. S. 462.] In none of these proceedings nor in any legislative enactment, either in express terms or by necessary implication, does it appear that the State has ever relinquished its right to serve process upon persons charged with crime who are found upon the Jefferson Barracks reservation. The courts and numerous opinions of United States Attorneys-General hold that the right of the United States to purchase or otherwise acquire title to land within the territorial limits of a state does not oust the jurisdiction or sovereignty of such state over the land so purchased; it remains until the state in express terms or by necessary implication relinquishes its authority. An illuminating discussion of this question may be found in Lee v. Kaufman, 15 Fed. Cas. No. 8191, Column 2, p. 192, which involved the title to the Arlington Estate in which the rule as to a state's jurisdiction as above stated, is approved. Quoting from Vattell, United States Judge HUGHES thus clearly states the reason in support of the retention of jurisdiction by a state as follows: "What is called the high domain, which is nothing but the domain of the body of the nation or of the sovereign who represents it, is everywhere considered as inseparable from sovereignty. The useful domain, or the domain confined to the rights that may belong to an individual in a state, may be separated from the sovereignty and nothing prevents the possibility of its belonging to a nation in places that are not under its jurisdiction. Thus may sovereigns have fiefs and other possessions in the territories of another prince. In these cases they possess them in the manner of private individuals." The cases of

United States v. Cornell, 25 Fed. Cas. No. 14867, p. 646, and 25 Fed. Cas. No. 14868, are further illustrative of the appropriate application of the rule. In these cases it is stated, in effect, that the purchase of lands by the United States for public purposes does not of itself oust the jurisdiction or sovereignty of the state over the lands so purchased; that exclusive jurisdiction is the necessary attendant of exclusive legislation; and, may we add, in the absence of the latter the former does not exist. We therefore overrule this contention. Finding no merit in the petitioner's application it is denied and he is ordered remanded to the custody of the respondents. *Woodson, C. J., James T. Blair, Ragland, White* and *David E. Blair, JJ.,* concur; *Graves, J.,* absent.