# Ex parte JACKSON.

No. A-12005. Oct. 28, 1953.

(262 P. 2d 721.)

W. G. Long, Ada, Herbert Hope, Maysville, for petitioner.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for respondent.

JONES, J. This is an original action in habeas corpus by petitioner, Buell B. Jackson, to secure his release from confinement in the county jail of Pontotoc county, where he is held awaiting extradition to the State of Arizona to face a criminal charge of murder there pending against petitioner.

At the hearing before this court, no attack was made upon the sufficiency or legality of the extradition papers, which were used as a basis to secure the warrant issued by the Governor of Oklahoma, but the petitioner sought his release upon the sole ground that he was not a fugitive from justice as that term is used under the Constitution of the United States. Art. 4, Sec. 2, U.S. Constitution.

The facts were that in March, 1950, a charge of murder was filed against the petitioner in the State of Arizona while the petitioner was a resident of Somerton, Arizona. That subsequently thereto and before the trial of petitioner for said offense. he was committed to the Arizona State Hospital for the Insane and the charge of murder was dismissed. On August 31, 1953, the director of the Arizona State Hospital notified the wife of the petitioner that the staff of the hospital would feel receptive towards returning the petitioner, Buell Jackson, to his family if a means could be worked out towards getting him back into society, away from the State of Arizona. Petitioner had a brother living at Ada in Pontotoc county, Oklahoma, and on September 11, 1953, the petitioner was given a conditional discharge from the hospital with the understanding that he would come to his brother's place of residence at Ada, Oklahoma, and that if he would notify the superintendent of the institution in his own handwriting that he had arrived at Ada, Oklahoma, he would be given a final discharge from the hospital. Thereafter, petitioner so notified the director of the hospital that he was at Ada, Oklahoma, and a final discharge was issued to him on September 17, 1953. Immediately after the final discharge of petitioner a charge of murder, second degree, was refiled and this proceeding in extradition was begun to cause the petitioner to be returned to Arizona to answer the charge there filed against him.

The petitioner contends that since he came to Oklahoma under compulsion from the director of the Arizona State Hospital in order to secure his release from confinement in said hospital, that he was not a fugitive from justice.

In 13 A.L.R. 415 the rule is thus stated:

"The decided weight of authority is to the effect that the mission, motive, or purpose inducing a person accused of being a fugitive from justice to leave the demanding state is immaterial, and that the courts of any asylum state will not consider such elements in an extradition proceeding, but will be satisfied by a simple showing that, having within the demanding state committed that which

by its laws constitutes a crime, when the alleged fugitive is sought to be subjected to its criminal process to answer for his offense, he has voluntarily left its jurisdiction and is found within the asylum state."

To the same effect is 22 Am. Jur., Extradition, Sec. 23.

Decisions from most of the states in the Union, including Oklahoma, are cited in support of this majority rule. In 35 C.J.S., Extradition, § 10, p. 327, it is said:

"The mode or manner of a person's departure from the state generally does not affect his status as a fugitive from justice; so the fact that a person's departure was involuntary or under legal compulsion will not, under most authorities, preclude his extradition as a fugitive from justice".

Oklahoma first became committed to the majority rule in the early case of Ex parte Williams, 10 Okla. Cr. 344, 136 P. 597, in which it was held:

"(a) To be a fugitive from justice under the laws of the United States, it is not necessary that the person charged with having left the state in which the crime was alleged to have been committed should have done so for the purpose of avoiding prosecution anticipated or begun, but simply that, having committed a crime within the state, he leaves such state, and, when he is sought to be subjected to its criminal process to answer for his offense, he is found within the territory of another state."

Later, the majority rule was followed in the case of Ex parte Hamilton, 41 Okla. Cr. 322, 273 P. 286; Ex parte Baker, 33 Okla. Cr. 413, 244 P. 459; In re Gundy, 30 Okla. Cr. 390, 236 P. 440. In Ex parte Hamilton, supra, the petitioner was paroled from the State of New Mexico under the specific condition that he proceed at once to Oklahoma City, Oklahoma, and there remain for at least twelve months. Later, and during the twelve months, the parole was revoked with no reason disclosed for such revocation. In the body of the opinion it is stated:

"It is generally held that a fugitive from justice within the meaning of the extradition law is one who having committed a crime leaves the state and is found in another state. It is not necessary that he should have left the state in which the crime was alleged to have been committed for the purpose of avoiding a prosecution anticipated or begun, but simply that, having within a state committed a crime against its laws, he has left its jurisdiction, and is found within the territory of another state when he is sought to be subjected to its criminal process to answer for his offense. 25 C.J. p. 258, § 13, note 66; 11 R.C.L. p. 730, § 23."

In the case of Cockburn v. Willman, 301 Mo. 575, 257 S.W. 458, 460, it is stated:

"The second contention is that the petitioner is not a fugitive from justice within the meaning of the federal Constitution and statutes. Judicial literature is replete with discussions upon this subject. The weight of these opinions is to the effect that the moving purpose which may have induced one accused of crime to leave the state in which it was committed will not be considered by the courts of the state in which he is found in determining an extradition proceeding; but that the sufficiency of the demand for his return will be determined by a formal showing that he is charged with the commission of a crime within the demanding state and that when sought to be subjected to criminal process to answer therefor, he is found to have voluntarily left that state and is then in the asylum state from which it is sought to extradite him."

Since the passage of the Uniform Criminal Extradition Law in 1949 by the State of Oklahoma, 22 O.S. 1951 §§ 1141.1 to 1141.30, this court has held:

"Where extradition papers required by statute are in proper form and extradition warrant has been issued by the Governor, and the extradition is not

based upon the provisions of Sec. 6 of Uniform Criminal Extradition Act, 22 O.S. Supp. § 1141.6, the only evidence admissible on habeas corpus to secure release from custody under the warrant of extradition is such as may tend to prove that defendant was not in demanding state at time crime was allegedly committed, or that the person sought to be extradited is not actually the person charged with the crime in the demanding state." Ex parte Scott, 91 Okla. Cr. 345, 219 P. 2d 249; Ex parte Deere, 93 Okla. Cr.' 291, 227 P. 2d 420; Ex parte Beam, 96 Okla. Cr. 207, 252 P. 2d 179.

There are some authorities in support of the minority rule. The case of In re Whittington, 34 Cal. App. 344, 167 P. 404, cited by petitioner, followed that rule, although in the later case of In re Thurber, 37 Cal. App. 571, 174 P. 112, the court, without citing the Whittington case, adopted the majority rule followed in Oklahoma and in a majority of the other states. Oklahoma, however, as shown by the above decisions, is committed to the majority rule.

The entire matter of interstate extradition of fugitives from justice is based upon the Constitution of the United States and federal statutes, and the rule followed by the United States Supreme Court as to who is a fugitive from justice is in conformity to the majority rule herein stated. See Roberts v. Reilly, 116 U.S. 80, 6 S. Ct. 291, 29 L. Ed. 544; Appleyard v. State of Massachusetts, 203 U. S 222, 27 S. Ct. 122, 51 L. Ed. 161, 7 Ann. Cas. 1073; Drew v. Thaw, 235 U.S. 432, 35 S. Ct. 137, 59 L. Ed. 302.

The writ of habeas corpus is denied and the petitioner is ordered delivered to the agent of the State of Arizona for transportation to the State of Arizona to answer the charge there filed against him.

POWELL, P. J., and BRETT, J., concur.