**In the Matter of the Habeas Corpus of William LANGLEY, Petitioner,**

**R. B. Travers, Agent of Adult Authority, Department of Corrections, State of California and Bob Turner, Sheriff of Oklahoma County, Oklahoma, Respondents.**

No. A–12586.

Criminal Court of Appeals of Oklahoma.

May 21, 1958.

Hill & May, and James M. May, McAlester, for petitioner.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore and Owen J. Watts, Asst. Attys. Gen., Ewing C. Sadler, County Atty., and Ben Choate, Jr., Asst. County Atty., Pittsburg County, McAlester, Okl., for respondents.

POWELL, Judge.

This is an original habeas corpus proceeding in which petitioner, who is now being detained by the respondent, Bob Turner, Sheriff of Oklahoma County, pursuant to extradition proceedings initiated by the State of California, seeks his release from custody of that official.

With the exception of one important matter to be pointed out, we conclude from an examination of the petition, response and transcript of evidence heard by the district court of Pittsburg County, Oklahoma and admitted herein, which court previous-

ly denied a writ of habeas corpus, that there is no dispute as to the basic facts involved in petitioner's detention.

On November 15, 1947 petitioner was convicted in the superior court of the State of California for the crime of armed robbery, and was sentenced to serve an indeterminate sentence of five years to life in the San Quentin California State Penitentiary. On June 6, 1952 petitioner was paroled from such institution by the Adult Authority Department of Corrections of the State of California. The parole agreement signed by William A. Langley on June 5, 1952 contained some fifteen provisions concerning the parolee's conduct while on parole, the violation of any of which would make the parole subject to revocation. The parolee agreed: *"I hereby waive extradition to the State of California from any State in the Union and from any territory or country outside the continental United States, and also agree that I will not contest any effort to return me to the United States or to the State of California. I have read, or had read to me, the foregoing conditions of my parole, and I fully understand them and I agree to abide by and strictly follow them, and I fully understand the penalties involved should I in any manner violate the foregoing conditions."* (Emphasis supplied.)

Petitioner admits that he violated the parole agreement in a number of respects, one of which was on December 11, 1952 leaving California without permission of the proper authorities, and going to Oklahoma City, Oklahoma, but returning to California on December 24, 1952; that on December 31, 1952 petitioner was apprehended and arrested and taken into custody by the F.B.I. authorities on an illegal flight warrant in California and incarcerated in the San Francisco, California, city jail; that on the same day the Federal complaint was dismissed and the San Francisco Police Department held petitioner for arrival of officers from the State of Oklahoma; that on January 7, 1953 petitioner was turned over by the city jail officials of San Francisco to the Oklahoma officers to be brought back to Oklahoma to face a charge of robbery with firearms in Oklahoma County. The party immediately got on its way to Oklahoma.

On January 13, 1953 the petitioner's parole was revoked by the Adult Authority, Department of Corrections, State of California; March 16, 1953 petitioner was tried before a jury in Oklahoma County and sentenced to serve a period of ten years in the Oklahoma State Penitentiary for the crime of robbery with firearms; February 12, 1958 petitioner was released from the Oklahoma State Penitentiary, having served his time, but a hold order having previously been filed by the California authorities, petitioner was delivered into the custody of the sheriff of Pittsburg County to await the arrival of a California officer pursuant to a warrant of arrest issued by the Adult Authority, Department of Corrections of the State of California, and thereafter petitioner was arrested under warrants of the Governors of the State of California and the State of Oklahoma, and petitioner, as stated, sought his release by writ of habeas corpus from the district court of Pittsburg County, which was denied. Then followed application to this court, and hearing was had and the petitioner ordered confined to the Oklahoma County jail until the matter could be determined.

On March 19, 1958 the Attorney General filed a supplemental response, attached to which was letter dated March 12, 1958 from the Department of Corrections, Division of Adult Paroles, Sacramento, California, along with the original letter dated March 12, 1958 from the Special Agent in charge of the F.B.I. at San Francisco to the Division of Adult Paroles and also letter dated March 11, 1958 from the Chief of Police of San Francisco to Division of Adult Paroles, all concerning the facts of delivery of petitioner to the Oklahoma officers.

Petitioner as grounds for release asserts in his petition, and argues in his brief: "Your petitioner maintains and contends that the surrendering of this petitioner by the authorities of the State of

California to the Sheriff of Oklahoma County, Oklahoma, was a waiver of the State of California's jurisdiction and right to demand the return of this petitioner to the said State of California, because of the said State of California's failure to exercise their authority while petitioner was detained and confined within its jurisdiction and with knowledge that this petitioner was a parole violator at the time they voluntarily surrendered this petitioner to the Oklahoma authorities as aforesaid, for the purpose of being transported back to Oklahoma under legal process, to there answer for the crime of robbery with fire arms, as aforesaid."

The only basis in the record to support the proposition that the petitioner was ever in the custody of the State officials of California or that the Division of Adult Paroles, State of California, ever had knowledge that petitioner had been arrested in California and was being held for Oklahoma officers, is from the following unsupported statements of the petitioner at hearing in the district court of Pittsburg County, at McAlester.

Petitioner was questioned by his counsel, Mr. May, as follows:

"Q. By whom were you arrested? A. F.B.I.

"Q. What charge was you arrested on? A. They told me it was to avoid prosecution, and they turned me over to the city, they put me in jail, city, and the parole officer also.

"Q. Was that flight from Oklahoma to avoid prosecution of an alleged crime that was committed here in Oklahoma City? A. Yes. * * *

"Q. While you were there in the county jail, whose custody were you in at that time, was it the county or city jail? A. It was the city jail, it wasn't the county jail.

"Q. The city jail of San Francisco, California? A. Yes, sir.

"Q. And you were in their custody, is that correct? A. In the city jail, yes sir."

Witness further testified that while he was in the city jail officers McGuire and Crewshank came and talked to him; that they were county officers, and wanted to know if he would sign a waiver of extradition, and that he agreed to if they would let his wife visit him and he signed the extradition waiver and was turned over to the Oklahoma officers. He said that he signed the extradition waiver before a judge and members of the court.

Witness further stated that while he was in the city jail his California parole officer by the name of Jenson visited him twice and attempted to question him about his trouble in Oklahoma and told him, "Well, they want you worse than we do and we are going to release you to them". He further said that he arrived back in Oklahoma about January 10, 1952 and *that the Adult Authority Department of Corrections of the State of California placed a hold order on him, right after he arrived back in Oklahoma.* On cross examination petitioner admitted the signature to the parole agreement and marked State's exhibit 1 was his, and that he signed it in order to obtain a parole.

R. B. Travers testified for the respondent and said that he was agent for the Adult Authority, Department of Corrections of the State of California. After qualification he identified Exhibit 2 as a warrant from the Governor of the State of Oklahoma on foreign requisition, authorizing the State of California to take possession, and which warrant he served on the petitioner; he also identified Exhibit 3 as agent's appointment from the Executive Department of the State of California, appointing witness as agent for California for the purpose of returning petitioner to the State of California. Also he identified Exhibit 4 as a warrant of arrest from the Adult Authority of the Department of Corrections of the State of California, issued on the 13th day of January, 1953. He further testified that petitioner's parole was revoked January 13, 1953.

Agent Travers further testified:

"Q. And as far as you know as an employee of the Adult Authority of the State of California, did the State of California have anything to do with releasing this man to the State of Oklahoma? A. As far as I know the State of California had nothing to do with the inmate in regards to his being released to the State of Oklahoma prior to the 13th day of January, 1953.

"Q. *Can you as an agent or employee of the Adult Authorities of the State of California bind the Adult Authorities or the Governor of the State?* A. *No, I can not.*

"Q. *You just work?* A. *I just work there.*

"Q. *That is what Mr. Jenson does?* A. *Right, Mr. Jenson is just an employee like myself.*" (Emphasis supplied.)

At hearing before this court a certificate of Adult Authority, Department of Corrections, showing revocation of petitioner's parole was admitted into evidence. It was further stated therein that the official minutes of the Authority showing such revocation was recorded on page 68 of Vol. 12 of the official minutes of the Authority. There was also presented for examination of this court a transcript of the additional records presented to the Governor of Oklahoma as basis for the granting of extradition writ.

■ The letters from the F.B.I. of San Francisco and the chief of police of San Francisco show that the F.B.I., after charges of flight to avoid state prosecution were dismissed in Federal court at San Francisco, turned petitioner over to the San Francisco chief of police to await delivery to Oklahoma officers to answer a charge in Oklahoma, and that officer Crewshank was the inspector in the police department of San Francisco. However, we shall not consider these letters in determination of the issues, because they are not in affidavit form.

First to be settled, is whether the record recited is sufficient to justify and support the proposition stated by petitioner as basis for issuance of a writ of habeas corpus. That is to say, did petitioner produce sufficient evidence to show that the State of California, acting through any authorized official, in fact released petitioner to the Oklahoma authorities, and if so, did such act cause that State to lose further jurisdiction over petitioner so as to prevent it from thereafter extraditing petitioner from a sister state for the purpose of completing a sentence, where immediately prior to leaving California he had been free on parole?

■ In determining this the question of the burden of proof arises. The Criminal Court of Appeals has uniformly held that the burden is on the habeas corpus petitioner to prove allegations of petition. Ex parte Ryan, 75 Okl.Cr. 144, 129 P.2d 204; Ex parte Seale, 75 Okl.Cr. 183, 129 P.2d 862, certiorari denied Seale v. Hunt, 317 U.S. 696, 63 S.Ct. 436, 87 L.Ed. 557; In re Hazel, 80 Okl.Cr. 66, 157 P.2d 225.

And see Davis v. Rhyne, 181 Kan. 443, 312 P.2d 626, and Engling v. Edmondson, 175 Kan. 883, 267 P.2d 487, where that court held that in habeas corpus proceedings the burden is upon petitioner to prove the grounds upon which he relies for his release, *and that the unsupported statements of a petitioner do not meet the requirements of the proof. We think this a correct statement of the law.* Herein, petitioner produced no evidence to support his statements and conjectures.

We conclude from the recited testimony of petitioner and R. B. Travers, agent for the Adult Authority, Department of Corrections, State of California, that there is insufficient evidence to show that petitioner was ever in custody of any California State official or agent for the Governor of the State of California or the Adult Authority. This being so, the parole officer, where petitioner was so held in adverse custody, to gain custody as against Oklahoma, under orderly procedure would have

had to have the issue determined in a court of general jurisdiction, after effort of State counsel, all of which would require some little time. He could not summarily force the city officers to deliver the prisoner without resorting to due process of law. There was no delay in the arrival of the Oklahoma officers for the return of petitioner to Oklahoma and whatever authority the parole officer actually possessed, we, under the record, discover no laches in the assertion of it.

 The further proposition of petitioner, amounting to a restatement of the first, that he should be released because the State of California did not intercede and prevent him from being extradited must fail. A municipal or corporate board acts as a board, and no agent can bind it unless he acts within the scope of his authority. The Board did not act until January 13, 1953 when petitioner's parole was revoked. He was then in Oklahoma. *A hold order was immediately placed with the Oklahoma authorities.* By the signing of a waiver of extradition, petitioner prevented his being held until the Governor and Adult Authority would have had official notice and would have had to act officially.

The very situation now complained of being brought about by the act of petitioner waiving extradition, he is now estopped from attempting by reason of his own acts to deprive the State of California of jurisdiction, particularly where by contract he had agreed to waive extradition.

And while it may be that the Governor and the Adult Authority, Department of Corrections of the State of California, eventually through due course of mail, learned officially of the action of petitioner appearing in court and waiving extradition to Oklahoma, such notice was apparently received too late for anything to have been done to prevent petitioner from being taken from California. There is nothing in the record to show when the notice of waiver was received by the Adult Authority of California, or when the Board met for the first time after the waiver was signed. Pre-

sumably, it was January 13, 1953, when the parole was revoked.

 The further attempt of counsel for petitioner in recent supplemental brief to argue assumptions as to the statutory authority of California parole officers, and assumptions as to what was probably done, and that California lost jurisdiction over petitioner by failure of petitioner's parole officer to seek to wrest custody of petitioner from the police authorities of the City of San Francisco within the few days the parole officer was said to have had notice that petitioner was being held for Oklahoma officers, cannot be considered, as laws of other states are facts to be established by competent evidence, and courts of Oklahoma cannot take judicial notice thereof. *In the absence of pleading and proof as to the laws of a sister state, including general statutes, laws are presumed to be the same as the laws of Oklahoma.* 12 O.S.A. § 484 (as amended Laws 1953, p. 53, § 8); Allen v. Allen, 201 Okl. 442, 209 P.2d 172, 14 A.L.R.2d 216; 336 U.S. 956, 69 S.Ct. 891, 93 L.Ed. 1110; Gray v. Martin, 206 Okl. 167, 242 P.2d 698; 20 Am.Jur (Evidence) § 47, and see cumulative supplement.

 *We find no statutory authority in Oklahoma whereby this State would lose jurisdiction to extradite a parolee who had willingly or unwillingly left this State with the knowledge of his parole officer.* See 57 O.S.1951 § 332 et seq.; 22 O.S.A. § 1141.1 et seq.

The State of California, if it had official notice, could, and it is reasonable to assume would, under the Uniform Parole Compact Act, 57 O.S.1951 § 347 et seq. or the Uniform Extradition Act, 22 O.S.A. § 1141.1 et seq., have turned petitioner over to Oklahoma for prosecution under the provisions of the Acts with right to have petitioner returned to that State. See Rider v. McLeod, Okl.Cr., 323 P.2d 741.

Such being our conclusion, it follows that petitioner being an admitted parole violator from California, in view of his signed agreement with the California authorities already quoted, and being found in this

State, is subject to extradition. A careful reading of the evidence presented fails to justify any other conclusion.

See Ex parte Williams, 10 Okl. Cr. 344, 136 P. 597, 51 L.R.A.,N.S., 668; Ex parte Hamilton, 41 Okl.Cr. 322, 273 P. 286; Ohrazada v. Turner, 164 Kan. 581, 190 P.2d 413; McTigue v. Rhyne, 180 Kan. 8, 298 P.2d 228; Brewer v. Goff, 10 Cir., 138 F.2d 710, 712.

As stated by Murrah, Circuit Judge, in the case last cited:

"The only prerequisites to extradition from one state to another are, that *the person sought to be extradited is substantially charged with a crime against the laws of the demanding state, and that he is a fugitive from justice.* McNichols v. Pase, 207 U.S. 100, 108, 109, 28 S.Ct. 58, 52 L.Ed. 121; Appleyard v. State of Massachusetts, supra [203 U.S. 222, 27 S.Ct. 122, 51 L.Ed. 161]; Roberts v. Reilly, supra [116 U.S. 80, 94, 6 S.Ct. 291, 29 L.Ed. 544]. Admittedly, the extradition papers are in proper form, that is, *he is substantially charged with having violated his parole in California, and it is well established that a parole violation is an extraditable offense within the meaning of the statute.* Reed v. Colpoys, 69 App. D.C. 163, 99 F.2d 396, certiorari denied 305 U.S. 598, 59 S.Ct. 97, 83 L.Ed. 379; Ex parte Williams, 10 Okl.Cr. 344, 136 P. 597, 51 L.R.A.,N.S., 668; Ex parte McBride, 101 Cal.App. 251, 281 P. 651; People ex rel. Westbrook v. O'Neill, 378 Ill. 324, 38 N.E.2d 174.[1]

We conclude that the papers presented to the Governor of Oklahoma herein were sufficient to justify him in issuing the Governor's warrant, and for the delivery of petitioner to agent Travers for return to California. The petition must be denied for lack of evidence to support the issue raised.

Arguendo[2], we are constrained to note that even if petitioner had been voluntarily surrendered by State officers of the State of California with full knowledge that he was then under parole and with unexpired judgment and sentence, that such would not, by the great weight of authority, have constituted a waiver of the right of the State of California to thereafter revoke the parole and demand the return of petitioner to that state to there satisfy the remainder of a prior judgment and sentence.[3] See Ex parte Guinn, 162 Tex.Cr. R. 293, 284 S.W.2d 721, there paragraph

1. See the following cases from this court where the Uniform Extradition Act was involved, and showing limited inquiry by this court under such Act. Ex parte Beam, 96 Okl.Cr. 207, 252 P.2d 179; Ex parte Scott, 91 Okl.Cr. 345, 219 P.2d 249; Ex parte Birch, 89 Okl.Cr. 417, 209 P.2d 510; Ex parte Jackson, 97 Okl. Cr. 289, 262 P.2d 722; Ex parte Ayers, 90 Okl.Cr. 255, 213 P.2d 297; Ex parte Decre, 93 Okl.Cr. 291, 227 P.2d 420.

In the Jackson case just cited, petitioner had been charged in Arizona with murder, but was committed to the State Hospital for the Insane and the charges dismissed. Later the superintendent discharged defendant from the hospital upon the condition that he would leave Arizona and go to Oklahoma to live with a brother. Thereafter the murder charge was refiled in Arizona and extradition proceedings instituted in Oklahoma for return of petitioner, who resisted on the ground that he came to Oklahoma under compulsion and was not a fugitive from justice. In re Whittington, 34 Cal.App. 344, 167 P. 404 was cited as authority. Jones, J., for this court, pointed out that the Whittington case expressed the minority view, and it was held that under the Uniform Extradition Act petitioner was a fugitive, and extradition granted.

2. These comments of course in strict sense amount simply to dicta, but are presented in view of the voluminous briefs and argument offered by counsel, and for information.

3. It is not meant to assert that under no circumstances could there be a waiver by a state of jurisdiction to thereafter extradite a prisoner who might be found in a sister state, such as the action of the Governor being construed as a pardon, or the official action of the proper board or officially designated authority. The cases cited will illustrate the weight of authority in situations set forth in such cases.

2 of Section 5 of the Uniform Criminal Extradition Act (22 O.S.A. § 1141.5) [4] is construed and is authority for this statement.

In the Guinn case the petitioner had been incarcerated in the Beckham County, Oklahoma jail under a complaint charging him with burglary and he was surrendered to the Sheriff of Potter County, Texas to answer a charge in that state, but the Oklahoma charges were not dismissed. After the Texas charges were disposed of, Oklahoma sought to return Guinn to Beckham County to stand trial, and he sought by writ of habeas corpus to obtain release. Prisoner set up as grounds for the writ that he could not be a fugitive since he was transported to Texas against his will, and, further, that the Oklahoma officials having voluntarily surrendered possession of his person to Texas officials before they had prosecuted him were estopped to ask for his return. The writ was denied. (The facts, it will be seen, are analogous to the facts in the Whittington and Hess cases hereinafter to be mentioned).

See also Moulthrope v. Matus, 139 Conn. 272, 93 A.2d 149, certiorari denied 345 U.S. 926, 73 S.Ct. 785, 97 L.Ed. 1357; United States ex rel. Moulthrope v. Matus, 2 Cir., 218 F.2d 466; McTigue v. Rhyne, supra, 180 Kan. 8, 298 P.2d 228.

In the McTigue case the court went so far as to hold that whether or not the demanding state relinquished its rights to recommit the alleged parole violator was a matter to be raised in courts of the demanding state, and was not a matter to be raised in habeas corpus proceedings by violator who was in custody for extradition.

Petitioner has cited a number of cases from this court that he asserts support the proposition that he advances, as follows: Ex parte Youstler, 40 Okl.Cr. 273, 268 P. 323; Adams v. Waters, 94 Okl.Cr. 428,

237 P.2d 914; Ex parte Guy, 41 Okl.Cr. 1, 269 P. 782; Ex parte Hart, 95 Okl.Cr. 269, 244 P.2d 859; Samet v. McLeod, Okl. Cr., 291 P.2d 836; Traxler v. State, 96 Okl.Cr. 231, 251 P.2d 815; Jarrett v. State, 49 Okl.Cr. 162, 292 P. 888.

It was pointed out in the recent case of Rider v. McLeod, supra, that this line of cases did not take into consideraton or construe either the Interstate Parole Compact (57 O.S.1951 § 347 et seq.) or the Uniform Criminal Extradition Act (22 O.S.A. 1141.1) the latter act adoped in 1949 and the prior in 1945. And criticized was the statement appearing in these cases to the effect that: "Governor's surrender of a person at liberty pending appeal from conviction to sister state waives state's jurisdiction over person and right to demand his return as fugitive." [323 P.2d 751.] Such statement in each case was purely dicta, and therefore cannot be accepted as authority for the point in question. What the cases really held was that a person found in this State might not raise such questions as a defense, unless, as in the Guy case, the release amounted to a pardon.

The amazing thing is that this gratuitous statement came about (see Ex parte Youstler supra) from a consideration of the argument unsupported by authority advanced by the Attorney General of Tennessee in the case of State v. Allen, 1840, 21 Tenn. 258 (the principal case relied on), and not from what the court said. In fact, the case involved the forfeiture of an appearance bond. Jesse J. Allen had been charged before a justice of the peace in Tennessee with murder and bound over to the circuit court, and one Martin and W. H. Allen executed an appearance bond. In the meantime, Jesse J. Allen went to Alabama and was charged with murder in that state, and the Governor of Tennessee, on demand of the Governor of Alabama, sur-

4. "The Governor of this State may also surrender on demand of the Executive Authority of any other state any person in this State who is charged in the manner provided in Section 22 of this Act (1141.23) with having violated the laws of the state whose Executive Authority is making the demand, even though such person left the demanding state involuntarily."

rendered the body of Jesse J. Allen. The state sought forfeiture of the appearance bond. The court held:

> "1. That it was not the imperative duty of the Governor of the State of Tennessee to have surrendered him until he was legally discharged from the operation of the laws of Tennessee.
>
> "2. That having, however, delivered him over to the constituted authorities of Alabama, such act discharged the bail from his recognizance."

The state had made it impossible for the bondsmen to have the accused appear for trial.

We do find a case, *not cited by petitioner,* In re Whittington, 1917, 34 Cal.App. 344, 167 P. 404, that holds:

> "One is not a fugitive from justice from the state of Texas, so as to be subject to extradition thereto, where, having been arrested in that state for an offense there committed, [but not tried] he was with permission of its authorities taken on process under extradition to the state of California, there to answer to a charge of having committed a crime, though the latter charge was later dismissed."

Cited in the Whittington case, as supporting the holding is the Kansas case of

Hess v. Grimes, 1897, 5 Kan.App. 763, 48 P. 596, involving a fugitive from Woodward County, Oklahoma Territory.

The Hess case (as well as the Whittington case) would be distinguishable from the within case even if in the present case the state authorities had actually delivered petitioner to the Oklahoma officers, in that petitioner herein had already been convicted and was at liberty on parole, whereas in the Hess case, Oklahoma Territory had not tried Hess, and conceivably, though this was not assigned as a reason in the Hess or the Whittington cases, because the facts did not justify, to force a trial years later (in cases where that might be true) when witnesses might have departed or be deceased, would be placing an undue burden upon the accused, and violate his constitutional right to a speedy trial.[5] Strangely enough, like in State v. Allen, supra, the Hess case cited as authority for its holding the case of Taylor v. Taintor, 1897, 16 Wall. 366, 21 L.Ed. 287, which was, as in the Allen case, a suit involving a bond forfeiture, but unlike in Allen, where forfeiture was sustained by reason of variance in facts.

Notwithstanding the above, and the noted distinctions, it is interesting to see what other courts have had to say about the Whittington and Hess cases.

5. Imaginable, where a *demanding state* had delivered an accused to a sister state without proceeding to trial on a pending charge, and there would be a delay of years so that accused's witnesses would no longer be available, or would be deceased, and accused's rights had been thus jeopardized, and he had been denied a speedy trial through no fault of his, and the demanding state would seek accused's return to stand trial, many jurisdictions no doubt would deny extradition, based squarely on the detriment done the accused. However, the denial of a speedy trial occasioned through no act of the accused, could be raised on return to the demanding state, and presumably his constitutional rights would be protected in one state as well as in another.

The principle involved was present in two opinions prepared by the writer. In the first case, Application of Cameron, 97

Okl.Cr. 81, 258 P.2d 208, petitioner was serving a life sentence, but charges were pending in Nowata County, and petitioner had over a long period of time demanded a trial or that the charges be dismissed. Mandamus was issued.

In Inverarity v. Zumwalt, 97 Okl.Cr. 294, 262 P.2d 725, petitioner was likewise in the State penitentiary and there was a complaint pending against him in Craig County in the justice court of Magistrate Zumwalt, but the warrant of arrest had never been served, and petitioner had never sought trial. That seems to have been the last thing that he wanted. He simply claimed that he had been denied a speedy trial and wanted the action dismissed without further proceedings. His petition was denied. A variance in the facts between cases can make all the difference in the world as to application of the law and final outcome.

In United States ex rel. Moulthrope v. Matus, 2 Cir., 1954, 218 F.2d 466, 468, Clark, Chief Judge, with Judges Medina and Learned Hand concurring, said:

"In the course of interpretation the phrase 'fled into,' found in both the Constitution and the statutes, has been assimilated into the phrase 'fugitive from justice.' As poinetd out below and in the state court, the case of In re Whittington [supra], seems not to have been generally followed."

In the recent case of Application of Fedder, 1956, 143 Cal.App.2d 103, 299 P.2d 881, 886, the California district court of appeals with reference to the Whittington case, said:

"This case was decided in 1917, and was cited in In re Marzec, 25 Cal.2d 794, 154 P.2d 873, and in In re McBride, 101 Cal.App. 251, 281 P. 651, and distinguished in both cases. The case is clearly contrary to the weight of authority and has been criticized in Ex parte Martin, 142 Kan. 907, 52 P.2d 1196; State ex rel. Shapiro v. Wall, 187 Minn. 246, 244 N.W. 811, 85 A.L.R. 114; People ex rel. Hutchings v. Mallen, 126 Misc. 591, 214 N.Y.S. 211, reversed 218 App.Div. 461, 218 N.Y.S. 432, affirmed 245 N.Y. 521, 157 N.E. 842; Ex parte Anthony, 198 Wash. 106, 87 P.2d 302; also in Moulthrope v. Matus, 139 Conn. 272, 93 A.2d 149, and in United States ex rel. Moulthrope v. Matus, 2 Cir., 218 F.2d 466, at page 468, the court said in reference to the Whittington case, it 'seems not to have been generally followed.' "

And in the late case of Davis v. Rhyne, supra, 1957, 181 Kan. 443, 312 P.2d 626, 629 the Supreme Court of Kansas, with reference to its Hess case and the Whittington case, said:

"As a matter of law, the Hess case [5 Kan.App. 763, 48 P. 596] has never been persuasive with this court. Although it was cited in the leading case of In·re Whittington, supra [34 Cal.

App. 344, 167 P. 404] this court said in In re Martin, 142 Kan. 907, 910, 912, 52 P.2d 1196, 1198, 1199:

" ' * * * The Kansas case cited in that opinion [the Hess case] has little, if any, application to the case before us.

" 'The Whittington case, although frequently cited, has rarely, if ever, been followed.

*　　*　　*　　*　　*　　*

" 'We are not disposed to follow the reasoning and holding of In re Whittington, supra. It is against the great weight of authority * * *.' "

While a few courts have followed the Whittington and Hess cases, both California and Kansas have, as we have seen, in effect repudiated or at least weakened those cases as authority for the principle stated.

As said in Brewer v. Goff, supra [138 F.2d 711], and in effect in many other cases to be found cited in the digests:

"The Constitutional provision and the procedural statutes were intended to provide a summary executive proceedings, by the use of which the closely associated states of the union could promptly aid one another in bringing to trial persons accused of crime in one state, but found in another beyond the reach of the state where the crime was committed. To this end, the courts have given the Constitution and the statute a liberal construction in order to effectuate and expedite the administration of justice in the several states."

(Citing a long·list of authorities.)

22 O.S.A. § 1141.28, Uniform Criminal Extradition Act, provides:

"The provisions of this Act [1141.1–1141.30] shall be so interpreted and construed as to effectuate its general purposes to make uniform the law of those states which enact it."

The effort seems to be to have the questions between a fugitive and a demanding

state determined in a forum of the state in which the alleged law violation took place, and on the merits of the case, rather than avoidance on technicalities connected with state lines.

Further discussion of arguments advanced in briefs, in view of the conclusions reached, is not required.

Writ denied. Petitioner ordered delivered to the agent of the State of California to be transported to that State.

BRETT, P. J., concurs.

NIX, J., dissents.

BRETT, Presiding Judge (concurring).

■■■ There are but two questions controlling in this proceeding, and the answer to which holds the solution to the case. The first is, is the petitioner a fugitive from justice from California? The second, did the conduct of the California authorities effect a waiver of California's right to extradite the petitioner? As pointed out in the majority opinion, there is no pleading and proof of California law before us, and in the absence thereof, the law of that state will be presumed to be the same as the law of Oklahoma. It is fundamental that we do not take judicial notice of the laws of a foreign state. In answer to the first question, the law of Oklahoma is controlling. Thereon, it has been held in Oklahoma in Ex parte Hamilton, 41 Okl.Cr. 322, 273 P. 286:

"Where a convicted prisoner in another state is there paroled, and voluntarily comes into this state, and thereafter his parole is revoked by the proper authorities of the former state, the prisoner then has the status of an escaped convict, and is a fugitive from justice from the former state, and if apprehended in this state, he may upon requisition be rendered to that state. His status is not changed by the fact that he came into this state after being paroled with the consent of the authorities of the former state."

To the same effect see Ex parte Foster, 60 Okl.Cr. 50, 61 P.2d 37. In Ex parte Jackson, 97 Okl.Cr. 289, 262 P.2d 722, 723, the petitioner asserted he left Arizona by compulsion, and therefore was not a fugitive from justice. To this contention, this court said:

"In 13 A.L.R. 415 the rule is thus stated:

" 'The decided weight of authority is to the effect that the mission, motive, or purpose inducing a person accused of being a fugitive from justice to leave the demanding state is immaterial, and that the courts of any asylum state will not consider such elements in an extradition proceeding, but will be satisfied by a simple showing that, having within the demanding state committed that which by its laws constitutes a crime, when the alleged fugitive is sought to be subjected to its criminal process to answer for his offense, he has voluntarily left its jurisdiction and is found within the asylum state.'

"To the same effect is 22 Am.Jur., Extradition, Sec. 23.

"Decisions from most of the states in the Union, including Oklahoma, are cited in support of this majority rule. In 35 C.J.S., Extradition § 10, p. 327, it is said:

" 'The mode or manner of a person's departure from the state generally does not affect his status as a fugitive from justice; so the fact that a person's departure was involuntary or under legal compulsion will not, under most authorities, preclude his extradition as a fugitive from justice'.

"Oklahoma first became committed to the majority rule in the early case of Ex parte Williams, 10 Okl.Cr. 344, 136 P. 597, 51 L.R.A.,N.S., 668, in which it was held:

" '(a) To be a fugitive from justice under the laws of the United States, it is not necessary that the person

charged with having left the state in which the crime was alleged to have been committed should have done so for the purpose of avoiding prosecution anticipated or begun, but simply that, having committed a crime within the state, he leaves such state, and, when he is sought to be subjected to its criminal process to answer for his offense, he is found within the territory of another state.'

"Later the majority rule was followed in the case of Ex parte Hamilton, 41 Okl.Cr. 322, 273 P. 286 (supra); Ex parte Baker, 33 Okl.Cr. 413, 244 P. 459; In re Gundy, 30 Okl.Cr. 390, 236 P. 440. In Ex parte Hamilton, supra, the petitioner was paroled from the State of New Mexico under the specific condition that he proceed at once to Oklahoma City, Oklahoma, and there remain for at least twelve months. Later and during the twelve months, the parole was revoked with no reason disclosed for such revocation. In the body of the opinion it is stated * *:

" 'It is generally held that a fugitive from justice within the meaning of the extradition law is one who having committed a crime leaves the state and is found in another state. It is not necessary that he should have left the state in which the crime was alleged to have been committed for the purpose of avoiding a prosecution anticipated or begun, but simply that, having within a state committed a crime against its laws, he has left its jurisdiction, and is found within the territory of another state when he is sought to be subjected to its criminal process to answer for his offense. 25 C.J. p. 258, § 13, note 66; 11 R.C.L. p. 730, § 23.'

"In the case of Cockburn v. Willman, 301 Mo. 575, 257 S.W. 458, 460, it is stated:

" 'The second contention is that the petitioner is not a fugitive from justice within the meaning of the federal Constitution and statutes. Judicial litera-

ture is replete with discussions upon this subject. The weight of these opinions is to the effect that the moving purpose which may have induced one accused of crime to leave the state in which it was committed will not be considered by the courts of the state in which he is found in determining an extradition proceeding; but that the sufficiency of the demand for his return will be determined by a formal showing that he is charged with the commission of a crime within the demanding state and that when sought to be subjected to criminal process to answer therefor, he is found to have voluntarily left that state and is then in the ₍ asylum state from which it is sought to extradite him.'

"Since the passage of the Uniform Criminal Extradition Law in 1949 by the state of Oklahoma, 22 O.S.1951, §§ 1141.1 to 1141.30, this court has held:

" 'Where extradition papers required by statute are in proper form and extradition warrant has been issued by the Governor, and the extradition is not based upon the provisions of Sec. 6 of Uniform Criminal Extradition Act, 22 O.S. 1951 § 1141.6, the only evidence admissible on habeas corpus to secure release from custody under the warrant of extradition is such as may tend to prove that defendant was not in demanding state at time crime was allegedly committed, or that the person sought to be extradited is not actually the person charged with the crime in the demanding state.' Ex parte Scott, 91 Okl.Cr. 345, 219 P.2d 249; Ex parte Deere, 93 Okl.Cr. 291, 227 P.2d 420, at page 421; Ex parte Beam, 96 Okl.Cr. 207, 252 P.2d 179.

"There are some authorities in support of the minority rule. The case of In re Whittington, 34 Cal.App. 344, 167 P. 404, cited by petitioner, followed that rule, although in the later case of In re Thurber, 37 Cal.App. 571, 174 P.

112, the court, without citing the Whittington case, adopted the majority rule followed in Oklahoma and in a majority of the other states. Oklahoma, however, as shown by the above decisions is committed to the majority rule.

"The entire matter of interstate extradition of fugitives from justice is based upon the Constitution of the United States and the federal statutes, and the rule followed by the United States Supreme Court as to who is a fugitive from justice is in conformity to the majority rule herein stated. See Roberts v. Reilly, 116 U.S. 80, 6 S.Ct. 291, 29 L.Ed. 544; Appleyard v. State of Massachusetts, 203 U.S. 222, 27 S.Ct. 122, 51 L.Ed. 161, 7 Ann.Cas. 1073; Drew v. Thaw, 235 U.S. 432, 35 S.Ct. 137, 59 L.Ed. 302."

See also, Ex parte Ayers, 90 Okl.Cr. 255, 213 P.2d 297, 298, wherein we held:

"To be a 'fugitive from justice' within meaning of federal law dealing with extradition, it is sufficient that person legally charged in demanding state with commission of crime within such state when sought to be subjected to its criminal process for the offense, has left its jurisdiction and is found within the jurisdiction of asylum state upon whose executive requisition is made.

"When a prosecution is initiated and pursued to judgment of conviction, accused before expiration of his sentence is still 'charged' within the meaning of the provisions of the United States Constitution and laws relating to extradition."

In the light of the foregoing authorities, the record establishes the petitioner as a fugitive from justice from the State of California and therefore the subject of extradition.

But, the petitioner contends that the conduct of Officer Jensen in stating in relation to Oklahoma's request for the petitioner for robbery: "Well, they want you worse than we do and we are going to release you to them", amounted to a waiver of California's right of extradition. This action on the part of parole officer Jensen, if it actually happened, was not binding on the petitioner. Petitioner was not deprived of any of his rights by Jensen's conduct, but to the contrary, petitioner had the right to resist extradition, which he did not do. Instead of opposing extradition, within the week thereafter, he signed a waiver thereof to Oklahoma and the officers on January 7, started to Oklahoma with him. Hence, it is apparent the petitioner's removal to Oklahoma was not by reason of Jensen's conduct, but by reason of petitioner's own voluntary assent. The only way Jensen's action could be construed as a waiver would be by a showing of express delegated authority to bind the Adult Authority of California, or by its acquiescence in his statement for so long a time as to effect a waiver of its right to the petitioner. The Adult Authority revoked the petitioner's parole six days later. Regardless of parole agent Jensen's conduct, it was neither sanctioned nor acquiesced in by the California Adult Authority. Instead of being charged with delay in acting, the majority is of the opinion that the matter was handled expeditiously. The thought occurs to the writer that to hold Jensen's conduct binding on the California Adult Authority, without a showing of express authorization, would be to ascribe to Jensen, as agent, as great authority as that possessed by his principal. Under the law of Oklahoma, a parole agent without express authority so to do, cannot bind the Pardon and Parole Board. If such not be the case in California, why have the Adult Authority? To hold otherwise would be contrary to public policy. It is thus clear to this writer that California not only did nothing to indicate a waiver, but took affirmative action indicative to the contrary. In light of the foregoing authorities and reasons, I must concur the writ should be denied and petitioner delivered to California.

We do not feel that we are overruling old Oklahoma landmark cases in the field of extradition, but are adopting the court's

opinions to the restricted meaning created by the Oklahoma Legislature's adoption of the Uniform Extradition Act. 22 O.S. 1951 §§ 1141.1 to 1141.30.

NIX, Judge (dissenting).

The record in this case reveals that the defendant was, on the 15th day of November, 1957, duly·tried and convicted for the crime of Robbery and sentenced to an indeterminate sentence of 5 years to life in the San Quentin, California, state penitentiary, located at San Francisco, California. On the 8th day of May, 1951, his term was refixed at five years and five years C S W P T and fixed at 11 years C C W P T and granted last 2 years and 7 months on parole. He was paroled by the Adult Authority, Department of Correction, of the State of California on the 6th day of June, 1952. The conditional parole provided among other things that "This parole is granted to you and accepted by you,

> "subject to the following conditions and with the knowledge that the adult authority has the power, *at any time, in case of violation of the conditions of parole to cause your detention and or return to a state prison.*"

Other provisions restricted defendant from leaving county of residence without permission of parole officer, nor was parolee allowed to marry. The petitioner in violation of his parole, left the state of California without the consent of his parole officer and came to Oklahoma, committed a crime and returned to California. He got married on December 28th, 1952, and was arrested by the FBI on December 31, on grounds of flight to avoid prosecution.

The testimony reveals that after the petitioner was incarcerated in the San Francisco City jail by the FBI agents, the following conversation took place:

"Q. After the authorities, the FBI picked you up on January 31st, December 31, I believe you said, what did they do with you then? A. I asked him if I would have to stand trial for·flight to avoid prosecution, he told me, 'No, it was a matter of formality that he arrested me,' and put me in the county jail, the parole ·officer wanted me also, then I had an extradition hearing, Oklahoma wanted me for robbery."

The petitioner further testified as follows:

"Q. While you were there in the city jail, did anybody come to visit you? A. My wife and parole officer.

"Q. What was the parole officer's name? A. Jensen.

"Q. How many times did the parole officer visit you there? A. Twice.

"Q. Do you recall the date of the first visit? A. No, it was right after I was arrested he came down and placed a hold order on me for the parole officer."

Further:

"Q. Did he talk to you about your escapade? A. Yes, he asked me about it. I told him I'd rather not discuss it with him, and he said, 'Well, you know you violated your parole?'

"Q. Violated it for what? A. For getting married.

"Q. What else? A. Leaving the state.

"Q. Was he aware of the charges he had placed against you? A. They didn't have any charges.

"Q. I mean from Oklahoma. A. Yes, he said, 'What about this charge in Oklahoma they want you for robbery,' and I said, 'I'd rather not discuss it,' and I asked him what's going to happen here, and he said, 'Well, they want you worse than we do and we are going to release you to them', to Oklahoma.

"Q. Your parole officer said that? A. Yes, that was on the second trip."

It is well to remember that on the arresting date, December 31st, petitioner was interviewed by county officers McGuire and Crewshank who asked defendant to sign waiver of extradition. Defendant testified

he first refused, but after they agreed to let him visit with his wife for about an hour, he went before the court and signed the waiver of extradition. The Oklahoma officers were given custody of the petitioner at the San Francisco jail on January 7, 1953, by county officers McGuire and Crewshank, and he was returned to Oklahoma to answer charges of robbery. Three days after his return to Oklahoma, the adult authority of California issued an order revoking petitioner's parole. The defendant was tried in this state, convicted, and given a sentence of 10 years. The petitioner, with good time and time for donating blood allowed, completed his sentence in Oklahoma, on the 12th day of February, 1958, and was released into the custody of the Sheriff of Pittsburg County, Oklahoma, was confined in jail to await the arrival of the officers from the agent of the Adult Authority of California with a warrant of arrest issued by said authority to take petitioner into custody and return him to California as a parole violator to serve out his unexpired term. Upon the arrival of said agent, R. B. Travers, he arrested petitioner under the warrant of the Governors of California and Oklahoma. The petitioner filed this writ of Habeas Corpus contending that the officials of California had with knowledge that the petitioner had violated the terms of his parole, released and surrendered custody of this petitioner to the authorities of Oklahoma without any terms or conditions whatsoever with reference to his return to California after prosecution in Oklahoma for the purpose of completing his unexpired sentence in California, and that the voluntary surrender to Oklahoma of petitioner by said authority of California, while petitioner was under an unexpired sentence of and to California, constitutes a waiver of jurisdiction and the right to demand the return of petitioner to California as a fugitive from justice. The petition relies upon and cites numerous cases of this state to support his contentions. As cited by the petition this court said in Ex parte Youstler, 40 Okl.Cr. 273, 268 P. 323, 324:

"It may be conceded that, where a person is convicted in this state and pending his appeal, while at liberty on the supersedeas bond, is delivered by the Governor under requisition to a sister state, such delivery amounts to a waiver of the jurisdiction of this state over his person, and when, under such requisition, he is taken out of the state, *he is not a fugitive, and this state would not have the right thereafter to extradite him from another state as a fugitive.*"

"Since the rendering of petitioner to the authorities of the state of Missouri was a *waiver of the right of this state to return the petitioner to this state after his release there, he could have successfully resisted any attempt by the authorities of this state to return him here.*"

This rule of law is well established in this state and is clearly approved in the following cases: Ex parte Middaugh, 40 Okl.Cr. 280, 268 P. 321; Adams v. Waters, 94 Okl. Cr. 428, 237 P.2d 914; Ex parte Guy, 41 Okl.Cr. 1, 269 P. 782; Ex parte Hart, 95 Okl.Cr. 269, 244 P.2d 859; Samet v. McLeod, Okl.Cr., 291 P.2d 836; Traxler v. State of Oklahoma, 96 Okl.Cr. 231, 251 P.2d 815; Jarrett v. State of Oklahoma, 49 Okl.Cr. 162, 292 P. 888.

This court can point with legal pride to its continued consistency in this phase of the law. It has never held contrary to the rule adopted in the foregoing cases. Extensive research reveals that some other jurisdictions have decided the question both ways and there seems to be considerable confusion in those jurisdictions as to the application of the rule. The majority opinion in this case, if adopted, will by the stroke of a pen, destroy or weaken the decisions of learned jurists of this court since statehood and on this particular question of law, leave the court in an utter state of confusion.

One of the very early cases deciding this question, In re Hess, 1897, 5 Kan.App. 763, 767, 48 P. 596, 597, the defendant Hess and

Orr were charged in Woodward County, Oklahoma Territory, with the crime of Grand Larceny, arrested, bound over to the District Court, indicted by the Grand Jury, 18th of December 1896, and were released on bail. Thereafter on the 11th day of November, 1896, they were charged by information in Clark County, Kansas, with the crime of Grand Larceny. Afterwards, application was made to the Governor of the State of Kansas for a requisition upon the Governor of Oklahoma Territory. The Governor of Oklahoma Territory issued his warrant for the arrest and return to Kansas of the petitioners. The defendants were arrested and taken to the State of Kansas and confined in jail. A writ of Habeas Corpus was brought by petitioners contending that the Oklahoma Court had jurisdiction, not Kansas. The court said:

"There is no question that on December 18, 1896, the Woodward county district court had jurisdiction of the petitioners. Neither is there any question that on said date the territory of Oklahoma waived its jurisdiction by the act of its governor in delivering up the petitioners to the agent of the state of Kansas upon the requisiton of the governor thereof. By such delivery and surrender the territory of Oklahoma can no longer require their appearance before her tribunals; and *all obligations which she has taken to secure that result thereupon*, at once, ipso facto, lose their binding effect, and no action can be maintained upon the bonds given to secure their appearance before the Woodward county district court."

Listed as authority were the following citations: Taylor v. Taintor, 16 Wale 366, 7 Am. & Eng., Enc.Law 643, § 19.

The rule in this case which arose in our own back yard with the Honorable Temple Houston representing the Oklahoma Territory has been consistently followed by this court during the last half century. Since California is the demanding state in the instant case it is well to note that the land mark on this question was adopted by California in the case of In re Whittington, 34 Cal.App. 344, 167 P. 404, where the court said:

"One is *not* a fugitive from justice from the state of Texas so as to be subject to extradition thereto, where, having been arrested in that state for an offense there committed, he was with permission of its authorities taken in process under extradition to the state of California, there to answer to a charge of having committed a crime, though the latter charge was later dismissed."

In this connection the majority opinion by Judge Powell refers to the late case, Applications of Fedder, 1956, 143 Cal. App.2d 103, 299 P.2d 881, which criticizes the above case and states it was cited In re Marzec, 25 Cal.2d 794, 154 P.2d 873, and In re McBride, 101 Cal.App. 251, 281 P. 651, and that the case is clearly contrary to the weight of authority. A careful study of the Fedder case will reveal it is not contrary to the contention of the petitioner here, but in that case the author relied upon the Uniform Extradition Act to deny the writ, which is not applicable if the demanding state has waived jurisdiction. Such is contended here. However, the author of that decision, which is ofttimes the case, carefully avoided references to other cases by the California court adopting the Whittington case. Ex parte Drake, Cal.App., 233 P.2d 931. The Court said:

"A person in custody for an offense in one state may be surrendered to another state which requests his extradition, and such surrender operates as a waiver of jurisdiction of state over person of prisoner and prisoner cannot thereafter be considered a fugitive from justice from surrendering state so as to permit it to requisition him on termination of proceedings against him in second state."

The state of California also upheld the Whittington case in Ex parte Kimler, Cal. App., 217 P.2d 640. This rule has been

upheld in many other jurisdictions. People ex rel. Barrett v. Bartley, 383 Ill. 437, 50 N.E.2d 517, 147 A.L.R. 935; State v. Saunders, 288 Mo. 640, 232 S.W. 973; Cozart v. Wolf, 185 Ind. 505, 112 N.E. 241; Carpenter v. Lord, 88 Or. 128, 171 P. 577, L.R.A.1918D, 674; State ex rel. Falconer v. Eberstein, 105 Neb. 833, 182 N.W. 500; Ex parte Bell, Ohio Com.Pl., 75 N.E.2d 186, 188. In the Bell case, supra, the court had the following to say about the right or power of a governor in such cases:

"In Re Opinion of the Justices to the Governor and Council, 201 Mass. 609, 89 N.E. 174, 24 L.R.A.,N.S., 799, the court held that the governor has no authority to interfere with the execution of a sentence in a criminal case other than by pardoning the offender. * * *

" '(The governor's) disability so to interfere lies deeper than in the absence of an empowering statute. The powers of the government of Massachusetts are divided among three departments—the legislative, the executive and the judicial—no one of which shall ever exercise the powers of either of the others. * * *

" 'It is within the province of the judicial department to try persons who are charged with crime and to impose punishment upon them if they are found guilty. Except by a pardon of the convict, neither of the other departments can nullify or set aside a sentence of the judicial department which is in process of execution under a proper warrant from the court.

" 'A warrant from the Governor, such as is supposed, unless it derives some peculiar power from the Constitution of the United States, would be of no effect against the warrant from the court under which the prisoner is held in execution of its judgment after conviction. * * *

" '(The governor's) power * * * is subordinate to the power of his own state, through its proper officers, to hold its prisoners, convicted of crime, until their expiation under its laws has become complete.'

"The general rule is adequately stated in 22 American Jurisprudence, page 256, section 19: 'In general under the constitution of the United States and the laws of Congress enacted thereunder, it is the imperative duty of the governor of the asylum state to deliver up a fugitive from justice upon receiving a requisition and papers in proper form from the executive of the demanding state; and, while the obvious purpose of such provision is to prevent an offender against the justice of one state from gaining an asylum and immunity from punishment by fleeing to another state, *this does not create a preference in the enforcement of the demanding state. Accordingly it is well settled that an asylum state has the right to punish an accused fugitive for crimes committed within its jurisdiction before it becomes obligated to honor a requisition for extradition by a sister state.'*"

I am thoroughly convinced that since this case is being decided in Oklahoma, our law would apply and it is unnecessary to pillage the books to seek law from other jurisdictions. However, in view of these numerous decisions and others not cited, I am unable to accept Judge Powell's and Judge Brett's "Arguendo" that this line of cases is against the great weight of authority.

I agree that there has been a tendency by some courts in recent decisions to construe the Uniform Criminal Extradition Act and the Interstate Parole Compact a barrier to the application of the long established rule stated in the cases heretofore cited. However, this is, in the opinion of your writer, an erroneous construction of those Acts. Under the Uniform Criminal Extradition Act, the person sought to be extradited must be substantially charged with a crime against the demanding state and a *fugitive from justice*. How could

it be said that a person over whom the demanding state had voluntarily waived jurisdiction is a fugitive from justice? The rule in these numerous decisions make it clear that the defendant is not subject to extradition where there has been a waiver of jurisdiction. It cannot be said that once that jurisdiction is waived it can be restored by virtue of the Uniform Extradition Act, but to the contrary, where there is a waiver of jurisdiction, the petitioner in no wise would be considered a fugitive from justice, therefore, could not be extradited under the provisions of the Act. The Interstate Parole Compact likewise, is not in conflict with this line of cases because for a parolee to come within the confines of that Act he must be paroled to a sister state under its specific provisions, which provides for the necessary consent and agreed supervision of the parole authorities of the receiving state. And, of course, where the parolee was released to a receiving state, under the rules and regulations of the Interstate Parole Act, there would be no waiver of jurisdiction and the petitioner would be subject to return under its provisions.

The recent cases cited by Judge Powell, such as Brewer v. Goff; Application of Fedder, the Moulthrape case, rely upon the Uniform Extradition Act to supersede "Waiver of Jurisdiction." However, I cannot agree that where one commits a crime against a state, is apprehended, convicted, and confined, can be voluntarily released without conditions or qualifications, or extradited to another state before the expiration of his punishment, and then be returned to that state as a *fugitive from justice*. A state has the inherent right and duty to apprehend and punish those who violate her laws and to keep them in custody until the punishment is completely satisfied, but to release him to another state without condition, agreement, or qualifications prior to the expiration of his punishment waives the right to return prisoner. It was said in People ex rel. Barrett v. Bartley, supra, 50 N.E.2d at page 521:

"That a prisoner cannot be handed from one jurisdiction to another for the purpose of trial, conviction and service of a new sentence, before being returned to the asylum State for service of the unexpired sentence, without violating his constitutional rights."

In the instant case there is but one question, and that is: 'Did California waive jurisdiction of this petitioner?' If so, the right to return the petitioner by extradition was also waived. If there was no waiver of jurisdiction, the writ should be denied and petitioner returned to California. Had the defendant been extradited from California in the beginning, there would be no doubt about that state having waived jurisdiction. However, in the instant case the petitioner waived extradition with the full knowledge of his parole officer who advised petitioner that California was going to release him to Oklahoma. It is the contention of the petitioner that the action of the authorities in California, from the time of petitioner's arrest until his delivery to the Oklahoma authorities, constituted a waiver of jurisdiction as to preclude his return.

Judges Powell and Brett, in the majority opinion, concludes that the parole officer and city and county officials would not bind the Governor nor the Adult Authority as to constitute waiver, and that there was no evidence to show they had knowledge of petitioner's arrest. With this I do not agree. The evidence is uncontradicted that the parole officer visited the petitioner twice and advised him that California was going to release him to Oklahoma. The petitioner went before a magistrate and signed a waiver of extradition. It therefore must be presumed that in the absence of any evidence to the contrary that the chief executive of said state had full knowledge of petitioner's arrest and confinement. Under the laws of this state a waiver of jurisdiction must be forthwith forwarded to the chief executive. 22 O.S.A. § 1141.25. Under the Uniform Extradition Act, the Cali-

fornia Penal Code, § 1555.1, provides the same, as follows:

"Any person arrested in this State charged with having committed a crime in another state * * * may waive the issuance and service of the Governor's warrant provided for in this chapter and all other procedure incidental to extradition proceedings, by subscribing in the presence of a magistrate within this State a writing which states that he consents to return to the demanding State; provided, however, that before such waiver shall be subscribed by such person, the magistrate shall inform him of his rights to require the issuance and service of a warrant of extradition as provided in this chapter.

"*If such waiver is executed, it shall forthwith be forwarded to the office of the Governor of this State and filed therein. The magistrate shall direct the officer having such person in custody to deliver such person forthwith to the duly authorized agent of the demanding State, and shall deliver to such agent a copy of such waiver.*"

"The evidence shows this petitioner was lawfully arrested by the Federal Bureau of Investigation on a warrant or by request of the Oklahoma authorities for a crime committed in another (Okla.) state; that said Federal authorities were aware that this petitioner's parole officer placed a 'hold' order on him, who had actual knowledge that this petitioner had violated his parole, and was also wanted by the Oklahoma authorities; that said Federal authorities surrendered this petitioner's custody to the said officials of California; and that he was taken from said city jail, and his custody surrendered there to the authorities of Oklahoma for the purpose of being transported to Oklahoma to answer for a crime, but that the said surrender of this petitioner to the Oklahoma authorities was not until, after having been granted, and having had, an extradition hearing be-

fore the proper public officials and the court and the members thereof. Section 1551.3 of the California Penal Code provides the duties to be performed by the proper officials upon such an arrest which is here set forth as follows: (22 O.S.A. § 1128.9)

"Immediately upon the arrest of the person charged, the magistrate must give notice thereof to the district attorney. The *district attorney* must immediately thereafter give notice to the *executive authorities* of the state, or to the *prosecuting attorney,* or presiding judge of the court of the city or county within the State having jurisdiction of the offense, to the end that a demand may be made for the arrest and surrender of the person charged."

If we presume that the officers and authorities of California complied with the law it would be hollow mockery to say the Governor and the authorities did not have knowledge of petitioners incarceration in the San Francisco jail. Under the authorities, we are to assume just that. This court said in Galbert v. State, Okl.Cr., 278 P.2d 245, 246:

"There is a presumption that officers perform their duties in the manner prescribed by law and where it is contended that there is noncompliance with certain statutory provisions, it is incumbent upon the one making such assertion to introduce evidence to support his contention."

Also supporting this rule see Rawls v. U. S., 10 Cir., 166 F.2d 532; Lewis v. U. S., 279 U.S. 63, 49 S.Ct. 257, 73 L.Ed. 615.

Therefore, it must be presumed from the facts and all the evidence in the case at bar that the said lawful constituted public officials performed their duties lawfully and that they followed the applicable law as provided by Section 1555.1 of the Penal Code of California pertaining to the proper procedure for detaining, signing the waiver of extradition at the extradition hearing before the court and its members, and finally surrendering the custody of this

**1114**

petitioner, at the lawful request and to the lawful authorities of Oklahoma for the purpose of returning him to Oklahoma to be here prosecuted for a crime committed by this petitioner.

If the above-quoted California statute was followed, and there is no evidence offered to the contrary, the contention of respondents that the action of the parole officer or city jailer or policeman in surrendering custody of this petitioner to the Oklahoma authorities is not binding upon the Governor of said state, so as to preclude him from extraditing this petitioner from Oklahoma as a fugitive, completely loses its force and becomes moot. For the reasons, that not only would the officials who surrendered custody of this petitioner to the Oklahoma authorities be acting upon the lawful order of the court, assuming of course, the court followed the applicable above-quoted statute which provides:

> "The magistrate shall direct the officer having such person in custody to deliver such person forthwith to the duly authorized agent of the demanding State, and shall deliver to such agent a copy of such waiver."

This petitioner contends that even absent any other applicable provision of said statute, the court's order directed to the proper public official to surrender this petitioner to the Oklahoma authorities alone would be sufficient to bind the Governor of California, yet the said statute further provided, in addition, that:

> "If such waiver is executed, it shall forthwith be forwarded to the office of the Governor of this State and filed therein."

Could it here be said that the Governor could not be charged with notice of the action taken to extradite this petitioner to Oklahoma with a signed waiver of said extradition in his office? Or be bound by an order of a court of his state? Or be permitted to now act and nullify all which has heretofore transpired in his state, be it lawful or unlawful? To so hold would be to say that the Governor of California is not bound by any order of the courts of his state, actions of public officials, nor the laws of his state unless he chooses to be.

This petitioner at the time of his arrest by the FBI and placed in jail at San Francisco was a parolee from San Quentin State Prison, also situated at San Francisco. He was paroled on a conditional parole stating that the Adult Authority of California had the right to detain the parolee or return him to San Quentin at any time. The parole officer of the Adult Authority visited petitioner twice and placed a hold on him at the San Francisco jail. He was empowered with the authority to forthwith return the petitioner to the San Quentin prison in the same county. The California court said in People v. Denne, 141 Cal.App.2d 499, 297 P.2d 451, 457:

> "From the statutes and cases last discussed, it is clear that the liberty accorded a parolee is partial and restricted. The granting of parole does not change his status as a prisoner. The parolee is not discharged but merely serves the remainder of his sentence outside rather than within the prison walls."

> "The parole system, as an enlightened penological technique, enables him to pay his debt to society in a prison without bars. But he continues at all times to remain in penal custody, the same as the prisoner allowed the privilege of working on the prison's 'honor farm.' Parole has simply pushed back the prison walls for him, allowing him wider mobility and greater personal opportunity while serving his sentence. The additional liberty conferred on the parolee is the result of a decision of the Adult Authority an administrative agency which is a component part of the Department of Correction. Pen. Code §§ 5000–5003, 5075, 4810. Rules and regulations for the conduct of paroled convicts are rules and regulations for the control of prisoners. Matter of Stanton, supra. *The en-*

*forcement of these rules while the parolee is at large is the responsibility of the parole officer, a functionary of the administrative agency charged with supervising the conduct and charting the social progress of the parolee."*

"His supervision of the parolee is of necessity a close one, since it bears strong analogy to that of a jailer to his prisoner, though the area of operations has been vastly extended."

The court further said:

"It is unnecessary for a parole officer to apply for a warrant to 'arrest' a parolee who is already his prisoner and who is at all times in custodia legis. The administration of the parole system must be realistic, and not strangled in technical niceties. *A parole officer's physical apprehension of his prisoner for suspected violation of parole is not an 'arrest' in the sense that a peace officer arrests a private individual suspected of a crime but a mere transfer of the subject from constructive custody into actual or physical custody."*

The parole officer in the instant case had full knowledge that the petitioner had violated his parole by leaving the state without permission, and committing a crime in another state, returning and getting married. The parole officer not only had the authority to transfer the petitioner across town to San Quentin but it was his duty to do so without delay for the reason petitioner was a known parole violator. It was said in the case of United States ex rel. Howard v. Ragen, D.C., 59 F. Supp. 374:

"The parole officers of state of Illinois in exercising right to reimprison parolee who has violated terms of his parole may not withhold such action indefinitely and exercise it at some remote time. Since exercise of such power at whim or caprice of parole officers would deprive parolee of 'due process of law.'"

"It is obvious that such a power cannot coexist with due process of law because under it the liberty of a citizen is not dependent upon any process of law whatsoever, but only the whim or caprice of the parole board in its decision to imprison or not imprison a parole violator."

In the case of Gilchrist v. Overlade, 233 Ind. 569, 122 N.E.2d 93, 100, in discussing the subject of revocation of paroles, Judges Emmert and Gilkinson state in their dissenting opinion:

"An act of delinquency (of Parolee) may be waived by failure to issue a warrant, or it may be waived after warrant is issued and the matter comes on for hearing. But after it is once waived there is nothing in the statute that authorizes a later revocation for the same act or omission. *The whole statutory scheme shows that parole authorities should exercise diligence after being apprised of an act or omission which might be cause for revoking the parole."*

Under the testimony the petitioner remained in jail with the parole officers' knowledge several days before the arrival of the Oklahoma officers and petitioner's parole was not revoked until sufficient time had expired to transport him to Oklahoma. Six days after he was released to the Oklahoma officers for return to this state, his parole was revoked and a hold placed on petitioner after he was convicted here. It would be preposterous to assume this took place without the consent and without the permission of the California authorities.

Even if it could not be said that he consented and approved of the public officials' performance of their duties, as aforesaid, he must be deemed to have waived the error, omission, neglect or failure, by failing so seasonably to object thereto. A similar question was raised in the case of Rawls v. United States, supra, in which the defendant had plead guilty in Federal Court and was sentenced therein while he was on parole from Oklahoma from a life sentence. He brought a writ of error coram

nobis to vacate the judgment and sentence of the Federal Court on the grounds that the Federal Court was without jurisdiction to convict and sentence him, because, at that time, he was under jurisdiction of Oklahoma under his life sentence previously imposed in the Oklahoma Court. The court there held in 166 F.2d on page 533:

"* * * there is no showing in the record that Oklahoma objected to the Federal Court taking the defendant into custody, while on parole, for the purpose of trial in that Court. The record is entirely silent on that point. It has been held repeatedly that there is a presumption that officers will act lawfully and that in the absence of an affirmative showing of unlawful conduct on their part, the presumption is that the first sovereign consented to the exercise of such jurisdiction."

The court further says in the body of its opinion, quoting:

"In Hebert v. State of Louisiana, 272 U.S. 312, 315, 47 S.Ct. 103, 104, 71 L.Ed. 270, 48 A.L.R. 1102, the Supreme Court said: 'In the absence of any showing to the contrary, and there is none, it properly may be assumed that the United States acquiesced in their arrest and trial on the accusation under the state law, notwithstanding they were then on bail awaiting trial in the federal court on the indictment pending there.'"

In the absence of any showing that the State of Oklahoma objected to the exercise of the Federal Court's jurisdiction over the defendant while he was still under its jurisdiction, although on parole, the presumption is that it consented to the United States taking appellant into custody, trying him and executing the judgment entered against him.

The testimony of the petitioner in this case is wholly unrefuted. It was stated by the attorney general during the course of the hearing before this court that affidavits would be presented to refute some of the testimony offered by the petitioner, however, 81 days have come and gone and as yet this court has not received affidavits or any other proof attempting to refute petitioner's testimony. With the facilities of both the states of California and Oklahoma available to the respondent, it must appear logical to assume the facts presented by petitioner were true. From that testimony and the law applicable thereto I am of the opinion that the actions of the State of California, through its agents, was sufficient to constitute a waiver of jurisdiction over the petitioner, and by their actions took him from the category of a fugitive from justice and the writ should be granted.